UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| B&J TRANSPORTATION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 06-39-B-W |
| | ) |
| SWIFT & COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDED DECISION ON
TRANSPORTATION ALLIANCE BANK'S MOTION TO DISMISS**

B&J Transportation, Inc., a Maine corporation, filed a civil action in state court to collect on shipping invoices issued to Swift & Company for certain interstate shipments totaling $83,976.79. Swift removed the matter to this Court. According to the amended complaint, Swift's payment processor, Cass Information Systems, mistakenly sent payment to Transportation Alliance Bank, Inc. B&J has added Cass and Transportation Alliance Bank ("TAB") as additional defendants in the amended complaint. The claim against TAB is for conversion of monies owed to B&J. This recommended decision concerns TAB's motion to dismiss, in which it is asserted, among other things, that this Court does not have *in personam* jurisdiction over TAB. (Docket No. 39.) In a companion recommended decision, I have recommended that the Court grant Swift's motion for summary judgment against claims seeking to recover unpaid shipping fees from Swift because those claims are barred by the statute of limitation set forth at 49 U.S.C. § 14705. I recommend herein that the Court grant TAB's motion to dismiss as well. B&J fails to demonstrate that the Court has jurisdiction over TAB.

**Jurisdictional Facts**

When facing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction is proper. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). If an evidentiary hearing is not held—and none has been requested on the pending motion—the plaintiff must make a *prima facie* showing of jurisdiction by "citing to specific evidence in the record that, 'if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Snell v. Bob Fisher Enter., Inc., 115 F. Supp. 2d 17, 20 (D. Me. 2000) (quoting Boit v. Gar-Tec Prods., 967 F.2d 671, 675 (1st Cir. 1992)). "To defeat a motion to dismiss when the court uses this method the plaintiff must make the showing as to every fact required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution.'" Boit, 967 F.2d at 675 (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir.1990)). The court should consider the pleadings,[1] affidavits, and exhibits filed by the parties, accept as true the plaintiff's properly supported proffers of evidence and resolve all factual disputes in favor of the plaintiff. Snell, 115 F.Supp.2d at 20; see also Boit, 967 F.2d at 675.

The jurisdictional facts in this case are drawn from B&J's amended complaint, a declaration supplied by Joe Couture,[2] TAB's vice president with respect to account receivable operations, an affidavit supplied by Bruce Sargent,[3] B&J's president and operations manager, and exhibits attached thereto. The facts are essentially uncontested.

1. B&J is a Maine corporation with its principal place of business in Mars Hill, Maine. B&J is in the business of truck brokerage and interstate transportation of goods by common carrier or freight forwarder. (Sargent Aff. ¶ 3.)

---

[1] Unsupported allegations in the pleadings need not be credited. Snell, 115 F.Supp.2d at 20.
[2] Docket No. 39, Elec. Attach. 2.
[3] Docket No. 51, Elec. Attach. 2.

2. Parris Trucking, Inc, is an agent of B&J. At all time relevant to this action, Parris was without independent operating authority or insurance and was operating under the complete operating authority and insurance of B&J. (Id. ¶ 5.)

3. Parris, as an agent of B&J, transported numerous loads of product in interstate commerce for Swift & Company. (Id. ¶ 6 & Ex. 1.)

4. As the principal of Parris, all accounts payable for interstate transportation services provided by Parris were to be sent to B&J at its principal place of business in Mars Hill, Maine. (Id. ¶ 7 & Ex. 2.)

5. Swift's payment processor, Cass Information Systems, Inc., paid a portion of the amount owed to B&J to TAB. (Id. ¶ 8.)

6. Swift made demand upon TAB for return of the funds and TAB refuses to disgorge the funds. (Id. ¶¶ 9-10; Am. Compl. Ex. C.)

7. TAB is a Utah corporation with a principal place of business in Ogden, Utah. TAB's principal place of business is also its sole company office. (Couture Decl. ¶¶ 4, 6.)

8. TAB offers a full line of financial services to the professional trucking market, including individual drivers and fleet motor carriers. TAB also provides financial products to other customers in transportation related areas. Specifically, among other products, TAB factors accounts receivables. (Id. ¶ 5.)

9. TAB has automated teller machines in various states but none in the state of Maine. (Id. ¶ 6.)

10. TAB has no employees in Maine. (Id. ¶ 7.)

11. TAB has no telephone book advertising, billboards, radio advertising, television advertising, or newspaper advertising in Maine. (Id. ¶ 8.)

12. TAB has no telephone number, mailing address, real estate, personal property, bank account or any other property in Maine. (Id. ¶ 9.)

13. TAB is not licensed to do business in Maine. TAB has not filed corporate tax returns or paid any form of corporate or franchise tax in Maine. TAB does not have a registered agent in Maine. (Id. ¶ 10.)

14. TAB's computer search of its current customer database reveals that it has no current customers in Maine. (Id. ¶ 11.)

15. TAB employs a sales representative whose market area is New England, including Maine. This sales representative does not reside in Maine. (Id. ¶ 12.)

16. TAB advertises in nationally distributed trade journals. (Id. ¶ 13.)

17. TAB maintains a website on the Internet.[4]

18. B&J alleges that TAB has committed the tort of conversion by retaining the funds paid to TAB by Cass, a Missouri corporation. (Am. Compl. at ¶¶ 6, 18.)

## Discussion

In order to preside over a legal controversy, a court must have "the power to require the parties to obey its decrees," or what the law refers to as "personal jurisdiction." United States v. Swiss Am. Bank, 191 F.3d 30, 35 (1st Cir. 1999). In a diversity proceeding, this Court's jurisdiction over a non-resident defendant is coextensive with that of a Maine state court. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). Thus, in order to exercise personal jurisdiction over TAB, a non-resident party to this diversity action, this Court must be persuaded that TAB's contacts with Maine "satisfy the requirements of both [Maine's] long-arm statute and the Fourteenth Amendment." Ticketmaster-New York v.

---

[4] B&J cites "exhibit 4" in support of this fact, but there is no exhibit 4 attached to its opposition filing at docket number 51 or elsewhere in the record. In any event, B&J provides the address of www.tabbank.com. A visit to that web address reflects that TAB permits account holders to log in to use certain online banking services.

Alioto, 26 F.3d 201, 204 (1st Cir. 1994). In Maine, these two requirements are really one, because Maine's long-arm statute is designed to be coextensive with the Fourteenth Amendment's due process clause. Dorf v. Complastik Corp., 1999 ME 133, ¶ 9, 735 A.2d 984, 988. To satisfy the strictures of due process in a diversity action, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit [will] not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Proof of these "minimum contacts" can be made in two ways: by showing that there is "specific jurisdiction" over the defendant or by showing that there is "general jurisdiction" over the defendant. "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities," Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998), whereas general jurisdiction "exists when the litigation is not directly founded on the defendant's forum-based [activity], but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state," United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). As it sounds, the "continuous and systematic" standard "is considerably more stringent" than the otherwise innocuous sounding "minimum contacts" standard. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 138 (1st Cir. 2006) (quoting Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) and Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st Cir. 1984)). This is so because the implications of general jurisdiction are considerable. An exercise of general jurisdiction over a defendant reflects that the non-resident defendant could be subjected to suit in the forum based on potentially any claim brought by potentially any plaintiff. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999) ("[A] defendant who has maintained a

continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.").

The facts of this case do not justify an exercise of specific jurisdiction over TAB because the claim of conversion has nothing to do with any activities engaged in by TAB in the State of Maine. Thus, B&J must demonstrate that TAB has maintained continuous and systematic contacts with the State of Maine that make it fair to subject TAB to civil process in Maine on, essentially, any claim. In order to carry this burden B&J points to three relevant contacts: (1) TAB's website, (2) TAB's advertisements in nationally distributed periodicals and (3) the fact that TAB has a sales representative assigned to a geographic territory that includes Maine. (Pl.'s Mem. of Law at 4-5, Docket No. 51.) These contacts are not enough to support the exercise of general jurisdiction over TAB. Mere advertising activity in a forum is not the kind of continuous and systematic activity that will permit a court to assume jurisdiction over a non-resident defendant, even when the defendant's sales associates are physically present in the forum. Harlow v. Children's Hosp., 432 F.3d 50, 66 (1st Cir. 2005); Glater, 744 F.2d at 217. Each contact that B&J points to is but a species of advertising. There is advertising to be found in periodicals that are distributed in Maine. There is a sales representative that does not live in Maine and who may or may not come to Maine—though he could, presumably, if a potential customer made contact. And there is a website that, in the absence of evidence of any actual Maine-based TAB account-holders or other customers, is nothing more than another species of advertising.[5] These are simply not the kinds of activities that would justify subjecting a non-

---

[5] There is a growing body of caselaw addressing the question of when Internet activity can support the exercise of personal jurisdiction over non-resident defendants. This case does not justify a prolonged discussion of the law in this area because the record is devoid of any evidence of a Maine resident utilizing the TAB website for any purpose connected with TAB's banking or related business activity. Compare, e.g., Zippo Mfg. Co. v. Zippo

resident defendant to the unfettered general jurisdiction of a Maine state court. Because the Court clearly does not have jurisdiction over TAB, there is no reason to discuss the additional grounds for dismissal raised in TAB's motion to dismiss.

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court GRANT Transportation Alliance Bank's motion to dismiss on the ground that the Court lacks *in personam* jurisdiction over that defendant. (Docket No. 39.)

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

---

Dot Com, Inc., 952 F. Supp. 1119, 1124 (W. D. Pa. 1997) (finding minimum contacts where non-resident defendant contracted with several thousand individuals and seven Internet access providers in the forum state for the purpose of enabling the individuals to view and download electronic newsgroup files for a fee); LFG, LLC v. Zapata Corp., 78 F. Supp. 2d 731, 736-37 (N. D. Ill. 1999) (concluding minimum contacts existed because Internet "portal" site permitted users to contact host and encouraged them to join host's mailing list in an effort to increase the number of subscribers, which bolstered host's ability to earn revenue from advertisers); Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328, 1330, 1333 (E. D. Mo. 1996) (finding minimum contacts where non-resident's Internet activity amounted to active solicitation of subscribers to develop an email mailing list of Internet users interested in receiving advertisements keyed to their personal interests in order to lure advertisers and advertising fees). Those cases cited by B&J in which jurisdiction was exercised over non-residents based on Internet or other advertising activity are all distinguishable from the instant case because, among other differences, they were decided based on either the "purposeful availment" or "relatedness" standards of the specific jurisdiction test, not the "continuous and systematic" standard of the general jurisdiction test. See Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34 (D. Mass. 1997); Unicomp, Inc. v. Harcros Pigments, 994 F. Supp. 24 (D. Me. 1998) (Carter, J.). This distinction is also true of Zippo, 952 F. Supp. at 1122, LFG, 78 F. Supp. 2d at 738, and Maritz, 947 F. Supp. at 1333-34. I am unaware of any federal case in which a court has exercised general jurisdiction over a non-resident defendant based merely on the existence of a website that permits the exchange of information.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated: November 8, 2006